**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| Kathryn J. Starkey | : |
| 203 Main Street, Rear Apt. 1 | : |
| Catawissa, PA 17820 | : |
| | : |
| Plaintiff | : |
| v. | : Civil Action No. |
| | : _____ |
| Milton Area School District | : |
| 700 Mahoning Street | : |
| Milton, PA 17847 | : |
| | : JURY TRIAL DEMANDED |
| and | : |
| | : |
| Dr. William A. Clark, Superintendent | : |
| Individually | : |
| 700 Mahoning Street | : |
| Milton, PA 17847 | : |
| | : |
| | : |
| and | : |
| | : |
| Dr. Debra Mathinos, Curriculum Coordinator | : |
| Individually | : |
| 700 Mahoning Street | : |
| Milton, PA 17847 | : |
| | : |
| and | : |
| | : |

Billie Jean Tyler, Supervisor, Special Education  :
Individually                                       :
700 Mahoning Street                                :
Milton, PA 17847                                   :
                                                   :
         Defendants.                               :
_____:

## COMPLAINT
## Jury Trial Demanded

Plaintiff, Kathryn Starkey, claims damages upon a cause of action against the above-captioned Defendants, collectively and individually, whereof the following is a statement:

## JURISDICTION

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, as a case arising under the laws of the United States. Jurisdiction is invoked pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, which provides for original jurisdiction of Ms. Starkey's claims arising under the laws the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

2.    This Court has jurisdiction over Ms. Starkey's state claims pursuant to its supplemental jurisdiction as codified at 28 U.S.C. § 1367.

3.    On or about August 13, 2008, Plaintiff received notice of her right to sue from the Equal Employment Opportunity Commission ("EEOC") and therefore Ms. Starkey has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court.

2

## VENUE

4.    Paragraphs 1 through 3 are incorporated herein by reference as though set forth in full.

5.    The actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant who resides within its jurisdictional limits.

6.    Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 1391(c) because one or more of the defendants reside in the Middle District of Pennsylvania and events or omissions giving rise to Plaintiff's claims have occurred in the Middle District of Pennsylvania and because one or more Defendant and can be found in this District.

7.    Plaintiff has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court.

## PARTIES

8.    Paragraphs 1 through 7 are incorporated herein by reference as though set forth in full.

9.    The Plaintiff, Kathryn Starkey (hereinafter "Ms. Starkey"), is 33 year old woman and teacher who currently resides in Columbia County Pennsylvania.  She holds a B.S. in Special Education from Bloomsburg University of Pennsylvania with a 3.44 GPA and a M.S. in Special Education from Bloomsburg University of Pennsylvania with a 3.91 GPA.

10.     Defendant MILTON AREA SCHOOL DISTRICT (hereinafter "Defendant Milton Area") is a school district and receives federal financial assistance, with its principal place of business at 700 Mahoning Street, Milton, Pennsylvania 17847.

11.     Defendant Dr. William A. Clark (hereinafter "Defendant Clark") is an individual residing in Pennsylvania and is employed as a Superintendent with the Defendant MILTON AREA at times relevant hereto. In his position as a Superintendent, Defendant Clark was responsible for all personnel issues within MILTON AREA including recruitment, hiring, salary changes, discipline, investigation of discrimination complaints, and terminations. Defendant Clark is named as a defendant in his individual capacity for aiding and abetting in discrimination and retaliation.

12.     Defendant Dr. Debra Mathinos, Curriculum Coordinator (hereinafter "Defendant Mathinos") is an individual residing in Pennsylvania and was employed as a Curriculum Coordinator with the Defendant MILTON AREA and Acting Supervisor at times relevant hereto. She is being sued in her individual capacity for aiding and abetting in discrimination and retaliation.

13.     Defendant Billie Jean Tyler (formerly known as Billie Jean Naugle), (hereinafter "Defendant Tyler") is an individual residing in Pennsylvania and was employed as a Special Education Supervisor beginning in January 2005 with the Defendant MILTON AREA at times relevant hereto. She is

being sued in her individual capacity for aiding and abetting in discrimination and retaliation.

## FACTUAL ALLEGATIONS

14. Paragraphs 1 through 13 are incorporated herein by reference as though set forth in full.

15. Plaintiff, Kathryn Starkey (hereinafter "Ms. Starkey"), is a 33 year old woman with a Master's degree in Special Education.

16. Ms. Starkey has an actual disability, has a record of a disability, and was regarded as having a disability and engaged in protected activity when she complained about discrimination.

17. Ms. Starkey alleges the Defendants violated Section 5 of the Pennsylvania Human Relations Act and the Americans With Disabilities Act of 1990, as amended, as more fully outlined herein.

18. Commencing on September 9, 2004 and continuing to the present time, Ms. Starkey was subjected to discriminatory and disparate treatment on the basis of her disabilities, perceived disabilities and/or her record of disabilities in that Defendants failed to provide reasonable accommodations.

19. On or about August 2004, Ms. Starkey commenced employment with Defendant Milton Area School District as a Special Education teacher, learning support.

20.    At all relevant times, Ms. Starkey was fully qualified to perform the essential functions of her job and did so in a satisfactory manner.

21.    At all relevant times hereto, Ms. Starkey suffered with a physical and/or mental impairments which substantially limited one or more major life activities.

22.    At the time Ms. Starkey commenced employment with Defendant Milton Area School District, she had been diagnosed with spinabifida, Chiari malformation, and shunted hydrocephalus.

23.    As a result of the above, Ms. Starkey was required to undergo a variety of medical procedures and surgeries including, without limitation, the installation of an externally programmable shunt to remove excess fluid around Ms. Starkey's brain ("mitigating measures").

24.    In addition, Ms. Starkey was prescribed a variety of medications in order to treat Ms. Starkey's underlying medical conditions and/or the effects of said mitigating measure.

25.    Ms. Starkey's underlying medical conditions, as more fully described above, either separately or in combination with said mitigating measures and/or prescription medications, substantially limited one or more major life activities including but not limited to concentrating, thinking, and/or short-term memory recall.

26.     Accordingly, Ms. Starkey's medical conditions, including the mitigating measures of her treatment and prescription medication, qualifies as a "disability" as that term is defined by the Pennsylvania Human Relations Act and/or the Americans With Disabilities Act.

27.     Despite Ms. Starkey's disability, she was capable of performing the essential functions of her job and had done so previously while employed in two substantially similar educational institutions.

28.     Accordingly, Ms. Starkey is a "qualified individual with a disability" as that term is defined under the Pennsylvania Human Relations Act and the Americans With Disabilities Act.

29.     On or about September 9, 2004, Ms. Starkey attended a meeting with Defendant to identify the nature of Ms. Starkey's disability and to begin the interactive process of requesting reasonable accommodations.

30.     Ms. Starkey believes and therefore avers that, upon presenting Defendants with information relating to her disability and requests for accommodations, Defendants engaged in discriminatory and disparate treatment as follows:

31.     On or about October 4, 2004, Defendant Dr. Debra Mathinos conducted a classroom "observation" of Ms. Starkey, which was wholly unsatisfactory.

32.     Dr. Mathinos' evaluation was performed during a time when only two (2) students were present in Ms. Starkey's classroom.

33.     Dr. Mathinos "observed" Ms. Starkey for only 20 minutes in order to draft her evaluation, notwithstanding her notation that she observed Ms. Starkey throughout the entire class period (e.g. 40 minutes).

34.     Accordingly, Dr. Mathinos was unable to properly and effectively "observe" Ms. Starkey's performance.

35.     Nevertheless, Dr. Mathinos' "observation" criticizes Ms. Starkey's performance in all but three performance rating categories.

36.     Indeed, on October 8, 2004, School Principal Bryan W. Noacker completed a follow-up observation of Ms. Starkey's performance; which was superior to the "observation" completed by Dr. Mathinos.

37.     Dr. Mathinos unfairly and illegally evaluated Ms. Starkey's performance in order to invoke discipline and/or in an effort to terminate Ms. Starkey's employment on account of Ms. Starkey's disability.

38.     Dr. Mathinos made disparaging and discriminatory statements against Ms. Starkey on account of Ms. Starkey's disability as follows:

39.     On or about October 18 through October 25, 2004, Dr. Mathinos was heard to state, "Ms. Starkey has disabilities" and "we need to fabricate and document incompetence to get rid of her".

40.     On or about January 7, 2005, Ms. Starkey heard Dr. Mathinos discussing Ms. Starkey and ordering another employee to "keep documenting her file".

41.   During Ms. Starkey's tenure of employment, Defendants assigned Billie Jean Tyler to serve as Ms. Starkey's supervisor/mentor, and ostensibly to assist Ms. Starkey in performing her duties.  However, Ms. Tyler failed to assist in any meaningful fashion, and contributed to the creation of a hostile and intolerable work environment.

42.   Ms. Tyler failed to assist or support Ms. Starkey; rather, Ms. Tyler would routinely chastise Ms. Starkey regarding Ms. Starkey's lesson plans and job performance.

43.   Ms. Tyler would regularly belittle Ms. Starkey and otherwise spoke condescendingly toward Ms. Starkey.

44.   Although Ms. Tyler was charged with the responsibility of assisting Ms. Starkey, she routinely undermined Ms. Starkey's job performance during meetings with supervisors, and failed to offer assistance at the time of the alleged deficiency in Ms. Starkey's performance.

45.   Although Ms. Tyler was charged with the responsibility of assisting Ms. Starkey in completing timely request forms for learning materials, Ms. Tyler accused Ms. Starkey of failing to meet the deadline rather than assisting Ms. Starkey when the opportunity existed on or before the deadline.

46.   On or about December 10, 2004, Defendant Tyler allegedly "observed" Ms. Starkey in the classroom and completed a "Professional Employee Observation form" in connection with same.

47.   At the time of Ms. Tyler's alleged "observation", it was during a mentoring meeting time and no students were present in Ms. Starkey's classroom nor did Ms. Tyler have the opportunity to observe Ms. Starkey while engaged in classroom instruction.

48.   Nevertheless, Ms. Tyler identifies numerous performance rating deficiencies in connection with Ms. Starkey's classroom instruction allegedly relating to Ms. Tyler's December 10, 2004 "observation".

49.   Defendants falsely accused Ms. Starkey of failing to provide lesson plans when they knew that Ms. Starkey's lesson plans were on her OVR laptop computer and had already been sent to Principal Noacher.

50.   On or about December 13, 2004, Ms. Starkey commenced a medical leave of absence from work.

51.   Prior to commencing her medical leave of absence, Ms. Starkey timely submitted her lesson plans to Principal Noacker via email.

52.   Upon Ms. Starkey's return from medical leave, she was faced with accusations and disparaging comments, stating that Ms. Starkey failed to submit her lesson plans and emergency lesson plans.

53.   Defendants failed to properly investigate or determine whether Ms. Starkey had submitted her lesson plans and opted to chastise Ms. Starkey for allegedly failing to complete and submit same.

54.    Because Defendant failed to present Ms. Starkey with a job description or teacher contract, Ms. Starkey had no prior knowledge that emergency lesson plans were required or that submission of lesson plans via email was impermissible.

55.    Defendants Milton Area School District, Dr. William A. Clark, Dr. Debra Mathinos, and Billie Jean Tyler discriminated against Ms. Starkey on the basis of her disability, perceived disability, and/or record of disability, as more fully described above and incorporated hereto by reference.   Said discrimination and disparate treatment was sufficiently severe and pervasive as to create a hostile work environment for Ms. Starkey.

56.    Defendant Dr. Mathinos aided, abetted, incited, compelled and/or coerced Defendant Milton Area School District in connection with the unlawful discrimination and creation of a hostile work environment, as more fully described above.

57.    Defendant Dr. Clark aided, abetted, incited, compelled and/or coerced Defendant Milton Area School District in connection with the unlawful discrimination and creation of a hostile work environment, as more fully described above.

58.    Defendant, Billie Jean Tyler, aided, abetted, incited, compelled and/or coerced Defendant Milton Area School District in connection with the

unlawful discrimination and creation of a hostile work environment, as more fully described above.

59.   Defendants failed to grant Ms. Starkey's requests for reasonable accommodations and failed to engage in the interactive process designed to cooperatively identify reasonable accommodations as required by law.

60.   On or about December 1, 2004, Ms. Starkey reduced to writing her previous requests for accommodations and presented the requests to Defendants.

61.   Defendants have failed and continue to fail to grant any requests for reasonable accommodations.

62.   Specifically, Defendant failed to provide Ms. Starkey with a laptop computer or access to the internet.  Defendant failed to provide Ms. Starkey with adequate templates to assist in drafting forms. Defendant failed to allocate a time period for Ms. Starkey to familiarize herself with equipment. Defendant failed to provide a mentor or supervisor who effectively assisted Ms. Starkey with the performance of her job or contributed to positive social interactions in the workplace.

63.   Instead of implementing the reasonable accommodations requested by Ms. Starkey, Defendants further discriminated and illegally retaliated against her by placing heightened and unreasonable demands on Ms. Starkey's performance, as more fully described above.

64.     In addition, on January 7, 2005, Defendant mandated that Ms. Starkey complete detailed and formal lesson plans for the week due the following Monday, January 10, 2005 and each subsequent week.

65.     Ms. Starkey believes and therefore avers that no such mandate was imposed upon similarly situated colleagues who do not suffer with disabilities and/or who did not previously request reasonable accommodations.

66.     By January 7, 2005, Defendants had yet to implement the requested reasonable accommodation associated with the use of Ms. Starkey's laptop computer so she could transport necessary information to complete work at her home.

67.     As a result of this failure, Ms. Starkey requested (by and through her OVR counselor, Don Fornwalt) that it outfit Ms. Starkey with a "jump drive".

68.     Ms. Starkey bought her own "jump drive", and Defendant failed to provide Ms. Starkey with meaningful instructions regarding the use of said "jump drive", or its connectivity via USB port to the appropriate computer hardware.

69.     In connection with the or outright refusal to provide the requested laptop computer and use of the Defendant's computer system and network, and prior to the time that Ms. Starkey requested the use of a "jump drive", Defendant suggested that Ms. Starkey simply email herself the appropriate templates so that Ms. Starkey could complete necessary paperwork and tasks

at home.  However, this suggestion required an unreasonable consumption of time and complicated formats in order to reestablish the required information into the school's computer network.  The suggestion, therefore, was untenable and unreasonably burdensome.

70.     In addition, Defendants failed to communicate effectively with Ms. Starkey to provide the minimum procedural requirements associated with the completion of assigned tasks and/or failed to communicate same in a timely fashion.  As a result, Defendants effectively "sabotaged" Ms. Starkey's ability to perform as requested, and therefore set her up to fail.

71.     On January 7, 2005, Defendant, without reasonable notice to Ms. Starkey, advised that Ms. Starkey was scheduled for a formal classroom observation on Monday, January 10, 2005.

72.     In connection with said formal classroom observation, Ms. Starkey was required to complete detailed lesson plans in a specific format permitting an effective classroom observation.

73.     Because Defendant failed to implement and/or provide the computer hardware, software, and printer previously requested as a reasonable accommodation, Ms. Starkey was incapable of completing the documents required in support of the scheduled classroom observation.

74.     As a result of Defendant's unlawful discrimination, disparate treatment, and illegal retaliation, Ms. Starkey was subjected to a hostile and intolerable

work environment which caused a deterioration of Ms. Starkey's physical and/or emotional wellbeing and resulted in the need for a medical leave of absence commencing Monday, January 10, 2005.

75.   Ms. Starkey remained out of work on said medical leave of absence until the date of her involuntary termination from employment.

76.   Nevertheless, on February 22, 2005, Defendant issued a "mid-year evaluation 2004-2005".   Said evaluation identifies 11 specific areas of alleged deficient performance by Ms. Starkey.

77.   The alleged deficiencies are wholly without basis in fact, and a pretext for unlawful discrimination on account of Ms. Starkey's disabilities, perceived disabilities, and/or record of disabilities.

78.   Defendants retaliated against Ms. Starkey in connection with Ms. Starkey's "protected activity" including without limitation her requests for reasonable accommodations and use of medical leaves of absences.

79.   Ms. Starkey's requests for reasonable accommodations, as more fully described above, constitutes "protected activity" as that term is defined by relevant state and federal law.

80.   Ms. Starkey's use of a medical leave of absence is a form of reasonable accommodation and, therefore, constitutes "protected activity" as that term is defined by relevant state and federal law.

81.     Defendant retaliated against Ms. Starkey as a result of her requests for reasonable accommodations and/or use of medical leaves of absence by imposing unreasonable discipline, fabricating allegations of misconduct and/or deficient performance, refusing to provide requested reasonable accommodations, and placing heightened and unreasonable demands on Ms. Starkey's performance, as more fully described above.

82.     Defendant s have not imposed unreasonable discipline, fabricated allegations of misconduct and/or deficient performance, or placed heightened or unreasonable work demand upon individuals who do not suffer with disabilities, perceived disabilities and/or records of disabilities nor whom requested reasonable accommodations.

83.     Defendant Dr. Mathinos aided, abetted, incited, compelled, and/or coerced Defendant Milton Area School District in connection with the unlawful discrimination and retaliation, as more fully described above.

84.     Defendant Dr. Clark aided, abetted, incited, compelled, and/or coerced Defendant Milton Area School District in connection with the unlawful discrimination and retaliation, as more fully described above.

85.     Defendant Tyler   aided, abetted, incited, compelled, and/or coerced Defendant Milton Area School District in connection with the unlawful discrimination and retaliation, as more fully described above.

86.    Defendants' unlawful discrimination and retaliation, as more fully described above, resulted in adverse employment action including but not limited to the termination of Ms. Starkey's employment.

87.    The unlawful discrimination and retaliation, as more fully described above, resulted in the need for a medical leave of absence commencing on or about Monday, January 10, 2005.

88.    Ms. Starkey's medical condition did not improve to a level that would have permitted her to return to work for the Defendants.

89.    As a result, Ms. Starkey was involuntarily terminated from employment.

90.    The termination of Ms. Starkey's employment related to or grew out of the subject matter of Ms. Starkey's initial charge of discrimination; namely, Defendants' unlawful discrimination and retaliation.

91.    Accordingly, Defendants' unlawful discrimination and retaliation, as more fully described above, resulted in adverse employment action.

92.    Ms. Starkey alleges that the Defendant's unlawful harassment, discrimination and retaliation, as more fully described above, were of a continuing nature that persisted up to and including the present time.

93.    Defendants' adverse actions against her were taken in part because Ms. Starkey was a qualified individual with a disability or Defendants viewed her as a person with a disability, and because she had a serious health condition for which they refused to accommodate, or both and also in

interference and retaliation for Ms. Starkey asserting her rights under federal and state law.

94.    As a result of Defendants' adverse actions, retaliation, and discrimination against her, Ms. Starkey has suffered greatly, including being humiliated, depressed, anxious, suffering damage to her reputation and physical and emotional well-being.  Ms. Starkey has also lost her teaching certification due to their false mid-year evaluation.

## COUNT I

**Disability Discrimination—Actual, Record of, Regarded As –
in Violation of the Americans with Disabilities Act**

*Against Defendant MILTON AREA SCHOOL DISTRICT*

95.    Paragraphs 1 through 94 are incorporated herein by reference as though set forth in full.

96.    Ms. Starkey was a qualified individual with a disability who could perform the essential functions of her job with or without a reasonable accommodation.

97.    Ms. Starkey had a record of a disability of which Defendant was aware.

98.    Defendant knew or had reason to know about Ms. Starkey's disability.

99.    Defendant knew or had reason to know about the need for an accommodation related to Ms. Starkey's disability.

100.   Defendant failed to provide Ms. Starkey with appropriate, reasonable accommodations and refused to engage in good faith in the interactive

process to determine whether an accommodation could be made for Ms. Starkey.

101. Defendant violated the Americans with Disabilities Act when it denied full and equal membership rights to Ms. Starkey and discriminated against her because of her actual disability, her record of disability, and/or perceived disabilities with respect to hire, tenure, terms, conditions and/or privileges of her employment.

102. Defendant willfully violated the Americans with Disabilities Act when they discriminated against Ms. Starkey and retaliated against her because of her actual disability, her record of disability, and/or perceived disabilities.

103. Defendant has a pattern and practice of harassing and retaliating against other employees with disabilities, record of disabilities, or that were regarded as disabled.

104. As a result of Defendant's willful violations of the ADA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

105. Defendant engaged in the retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

106. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

107. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages.

## COUNT II

**Hostile Work Environment and Harassment Based on Disability Status in Violation of the Americans with Disabilities Act**

*Against Defendant MILTON AREA SCHOOL DISTRICT*

108. Paragraphs 1 through 107 are incorporated herein by reference as though set forth in full.

109. After Defendant and its supervisory employees learned of Ms. Starkey's disabilities they subjected her to a hostile work environment and harassment based on her disability as more fully outlined throughout this Complaint.

110. Ms. Starkey belongs to a protected group, e.g., was disabled, had a record of disability, and/or was perceived as being disabled as more fully outlined throughout this Complaint.

111.   Ms. Starkey was subjected to unwelcome harassment during her employment with Defendant as more fully outlined throughout this Complaint.

112.   The harassment complained of was based on her disability or disabilities as more fully outlined throughout this Complaint.

113.   The harassment complained of affected a term, condition, or privilege of Ms. Starkey's employment as more fully outlined throughout this Complaint.

114.   Defendant and its supervisory employees knew or should have known of the harassment and failed to take prompt, remedial action as more fully outlined throughout this Complaint.

115.   Instead of taking prompt, remedial action, Defendant MILTON AREA and its supervisory employees retaliated against Ms. Starkey for complaining as more fully outlined throughout this complaint.

116.   The disability-based harassment was sufficiently severe or pervasive to alter the conditions of Ms. Starkey's employment and created an abusive working environment as more fully outlined throughout this Complaint.

117.   Defendant's hostile work environment and harassment of Ms. Starkey is more fully outlined throughout this Complaint and includes, but is not limited to giving her negative performance evaluations and "write-ups", ostracizing her, making discriminatory comments about her disabilities and medical conditions, and denying her the support needed to perform her job.

118.   Therefore, Defendant subjected Ms. Starkey to disability-based harassment and a hostile work environment in violation of the Americans with Disabilities Act.

119.   As a result of Defendants' willful violations of the ADA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

120.   Defendant engaged in the discriminatory and retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

121.   As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

122.   The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being thereby entitling Plaintiff to punitive damages.

## COUNT III

**Retaliation in Violation of the Americans with Disabilities Act**

***Against Defendant MILTON AREA SCHOOL DISTRICT***

123.   Paragraphs 1 through 122 are incorporated herein by reference as though set forth in full.

124.   During her employment with the Defendants, Ms. Starkey has been asserting her rights under federal and state law to work with Defendant in a non-discriminatory, non-retaliatory environment.

125.   When Ms. Starkey asserted her rights under federal and state law, Defendant had actual notice of Ms. Starkey's basis for a discrimination complaint.

126.   After complaining to Defendant, Ms. Starkey suffered illegal retaliation by Defendant and its employees, more fully outlined above, which was materially adverse to a reasonable employee.

127.   Ms. Starkey repeatedly warned Defendants that she was being subjected to discrimination in the form of unfair and disparate practices and being subjected to a hostile work environment by Defendants and her coworkers.

128.   Defendant and its supervisory employees failed or refused to investigate, alleviate, or eliminate the discrimination being practiced against Ms. Starkey despite her complaints thereof.

129. The acts and omissions described herein were illegally motivated by Ms. Starkey engaging in protected activity and/or being a member of a protected class.

130. Additionally, the retaliation negatively affected the terms, conditions, and privileges of Ms. Starkey's employment with Defendant.

131. Defendant's actions against Ms. Starkey, as more fully outlined above, were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

132. Defendant has violated the Americans with Disabilities Act in retaliating against Ms. Starkey for asserting her rights under federal and state law.

133. Therefore, Defendant has retaliated against Ms. Starkey in violation of the Americans with Disabilities Act.

134. Defendant and its supervisory employees have a pattern and practice of harassing and retaliating against other employees with disabilities, record of disabilities, or that were regarded as disabled.

135. As a result of Defendant's willful violations of the Americans with Disabilities Act, Ms. Starkey has suffered damages, including loss of reputation, loss of future income and growth opportunities, damage to her career, and loss of happiness and well-being.

136. As a result of Defendant's willful violations of the ADA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss

of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

137.   Defendant engaged in the discriminatory and retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

138.   As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

139.   The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages.

## COUNT IV

**Disability Discrimination—Actual, Record of, Regarded As – in Violation of the Pennsylvania Human Relations Act**

*Against All Defendants Individually and Collectively*

140.   Paragraphs 1 through 139 are incorporated herein by reference as though set forth in full.

141.   Ms. Starkey was a qualified individual with a disability who could perform the essential functions of her job with or without a reasonable accommodation.

142.   Ms. Starkey had a record of a disability of which Defendants were aware.

143.   Defendants knew or had reason to know about Ms. Starkey's disability.

144.   Defendants knew or had reason to know about the need for an accommodation related to Ms. Starkey's disability.

145.   Defendants failed to comply with the requirements for providing Ms. Starkey with an accommodation and refused to engage in good faith in the interactive process to determine whether an accommodation could be made for Ms. Starkey.

146.   Furthermore, Defendants had no legitimate business reason for failing to engage in the interactive process with her in good faith and, for failing to provide her with a reasonable accommodation.

147.   Defendants violated the Pennsylvania Human Relations Act when it denied full and equal membership rights to Ms. Starkey and discriminated against her because of her actual disabilities, record of having a disability, and/or perceived disabilities with respect to hire, tenure, terms, conditions and/or privileges of her employment.

148. Defendants willfully violated the Pennsylvania Human Relations Act when it discriminated against Ms. Starkey and retaliated against her because of her actual, record of, and/or perceived disabilities.

149. Defendants have a pattern and practice of harassing and retaliating against other employees with disabilities, record of disabilities, or that were regarded as disabled.

150. As a result of Defendants' willful violations of the Pennsylvania Human Relations Act, Ms. Starkey has suffered damages, including loss of reputation, loss of future income and growth opportunities, damage to her career, and loss of happiness and well-being.

151. As a result of Defendants' willful violations of the PHRA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

152. Defendants engaged in the discriminatory and retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

153. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost

wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

154. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being.

## COUNT V

### Hostile Work Environment and Harassment Based on Disability Status in Violation of the Pennsylvania Human Relations Act

#### *Against All Defendants Collectively and Individually*

155. Paragraphs 1 through 154 are incorporated herein by reference as though set forth in full.

156. After Defendant and its supervisory employees learned of Ms. Starkey's disabilities they subjected her to a hostile work environment and harassment based on her disability as more fully outlined throughout this Complaint.

157. Ms. Starkey belongs to a protected group, e.g., was disabled, had a record of disability, and/or was perceived as being disabled as more fully outlined throughout this Complaint.

158. Ms. Starkey was subjected to unwelcome harassment during her employment with Defendants as more fully outlined throughout this Complaint.

159. The harassment complained of was based on her disability or disabilities as more fully outlined throughout this Complaint.

160. The harassment complained of affected a term, condition, or privilege of Ms. Starkey's employment as more fully outlined throughout this Complaint.

161. Defendant and its supervisory employees knew or should have known of the harassment and failed to take prompt, remedial action as more fully outlined throughout this Complaint.

162. Instead of taking prompt, remedial action, Defendant MILTON AREA and its supervisory employees retaliated against Ms. Starkey for complaining as more fully outlined throughout this complaint.

163. The disability-based harassment was sufficiently severe or pervasive to alter the conditions of Ms. Starkey's employment and created an abusive working environment as more fully outlined throughout this Complaint.

164. Defendants' hostile work environment and harassment of Ms. Starkey is more fully outlined throughout this Complaint and includes, but is not limited to giving her negative performance evaluations and "write-ups", ostracizing her, making discriminatory comments about her disabilities and medical conditions, and denying her the support needed to perform her job.

165. Therefore, Defendants subjected Ms. Starkey to disability-based harassment and a hostile work environment in violation of the Pennsylvania Human Relations Act.

166. As a result of Defendants' willful violations of the PHRA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss

of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

167. Defendants engaged in the discriminatory and retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

168. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

169. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being.

## COUNT VI

**Retaliation in Violation of the Pennsylvania Human Relations Act**

*Against All Defendants Collectively and Individually*

170. Paragraphs 1 through 169 are incorporated herein by reference as though set forth in full.

171.   During her employment with the Defendants, Ms. Starkey had been asserting her rights under federal and state law to work with Defendants in a non-discriminatory, non-retaliatory environment.

172.   When Ms. Starkey asserted her rights under federal and state law, Defendants had actual notice of Ms. Starkey's basis for a discrimination complaint.

173.   After complaining to Defendants, Ms. Starkey suffered illegal retaliation by Defendant and its employees, more fully outlined above, which was materially adverse to a reasonable employee.

174.   Ms. Starkey repeatedly warned Defendants that she was being subjected to discrimination in the form of unfair and disparate practices and being subjected to a hostile work environment by Defendants and her coworkers.

175.   Defendant and its supervisory employees failed or refused to investigate, alleviate, or eliminate the discrimination being practiced against Ms. Starkey despite her complaints thereof.

176.   The acts and omissions described herein were illegally motivated by Ms. Starkey engaging in protected activity and/or being a member of a protected class.

177.   Additionally, the retaliation negatively affected the terms, conditions, and privileges of Ms. Starkey's employment with Defendants.

178. Defendants' actions against Ms. Starkey, as more fully outlined above, were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

179. Defendants have violated the PHRA in retaliating against Ms. Starkey for asserting her rights under federal and state law.

180. Therefore, Defendants have retaliated against Ms. Starkey in violation of the PHRA.

181. Defendant and its supervisory employees have a pattern and practice of harassing and retaliating against other employees with disabilities, record of disabilities, or that were regarded as disabled.

182. As a result of Defendants' willful violations of the Pennsylvania Human Relations Act, Ms. Starkey has suffered damages, including loss of reputation, loss of wages and benefits, loss of future income and growth opportunities, damage to her career, and loss of happiness and well-being.

183. As a result of Defendant's willful violations of the PHRA, Ms. Starkey has suffered damages, including loss of reputation, loss of pay and benefits, loss of future income and growth opportunities, damage to her career, loss of happiness and well-being, and other emotional distress and compensatory damages.

184. Defendants engaged in the discriminatory and retaliatory conduct as fully set forth above and incorporated herein by reference with malice and/or

intentional indifference to Plaintiff's statutory civil rights protected by federal and state law.

185.   As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

186.   The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Starkey, respectfully requests that this Court enter judgment in her favor and against the Defendants and direct the following relief:

1.   For a money judgment representing compensatory damages, including loss wages, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon;

2.   For a money judgment for compensatory and punitive damages for creating, permitting, and continuing retaliation and discrimination against Ms. Starkey, including compensation for the distress that arises from being the target and victim of unlawful discriminatory and retaliatory conduct and being made unlawfully subject to a hostile

work environment and retaliation for exercising the lawful rights afforded to her under federal and state anti-discrimination laws;

3. For a money judgment representing punitive damages for the Defendants' willful violation of the Americans with Disabilities Act and any related statutes regulations, and rights;

4. For a money judgment representing prejudgment interest;

5. For an Order directing Defendants pay relief to Ms. Starkey in the form of front pay for those wages and benefits she would be receiving if she had been properly promoted;

6. That the Court retain jurisdiction over this action until the Defendants have fully complied with the Orders of this Court and that the Court require Defendants to file such reports as may be necessary to supervise such compliance;

7. For the costs of suit, including an aware of reasonable attorneys' fees;

8. Award to Ms. Starkey past and future damages for loss of income, growth opportunities, and all benefits denied to her due to the improper and unlawful actions of the Defendants;

9. Fine Defendants for their violations of state and federal law;

10. Expunge Defendants' false evaluations of Ms. Starkey and restore her teaching certification; and,

11.     For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination, and retaliation for being subject to workplace discrimination, harassment, retaliation, and a hostile work environment.

**JURY TRIAL DEMANDED**

Respectfully submitted,
KATHRYN STARKEY
by and through her attorneys,

_____**/s/  Solomon Z. Krevsky**_____
CLARK & KREVSKY LLC
Solomon Z. Krevsky, Esq.
Atty. ID: 72719
20 Erford Road
Suite 300A
Lemoyne, PA  17043
717-731-8600
szk@clark-krevskylaw.com

_____**/s/  Lisa Matukaitis**_____
MATUKAITIS LAW LLC
Lisa Matukaitis, Esq.
Atty. ID: 202467
211 State Street, Suite 100
Harrisburg, PA  17101
lm@matlawllc.com
717-412-7759

Dated:  November 4, 2008